RAMÓN OTERO, Plaintiff and Appellant, v. AGUSTINA MIRABAL, Defendant and Appellee.

No. 5020. Argued April 1, 1930.—Decided January 16, 1931.

*E. H. F. Dottin* for appellant. *Dubón & Ochoteco* for appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

Prudencio Cordero sold to Agustina Mirabal, by public deed executed before notary Julio César González on November 5, 1913, an urban estate consisting of a lot and two one-story frame houses with galvanized iron roof, in Flores Street, Cataño, for four hundred dollars delivered in the presence of the notary, it being agreed between the parties that, if the vendor within one year from the date of the deed returned to the purchaser the purchase price, the purchaser would execute to him a deed of resale, but that if the purchase price was not returned within that time the sale would irrevocably become final. It was further stipulated that the vendor would remain as the lessee of the property for the term of one year at a rental of eight dollars monthly, and he bound himself to insure the houses against fire for the duration of the lease. The deed was recorded in the registry of property and has been introduced in evidence at the trial of this case.

On December 29, 1922, the registrar entered on the margin of the record of the said deed the consummation of the said sale.

It appears from another deed dated May 25, 1916, executed before notary Artemio P. Rodríguez, that Prudencio Cordero sold to Ramón Otero several pieces of real property. As regards the lot and houses sold by him to Agustina Mirabal, it was stipulated that that transaction was a sale with an agreement to repurchase within one year and that, al-

though the year had elapsed, the right of redemption had been extended from time to time and was still in force; and Cordero conveyed such right of redemption to Otero for a consideration, which he acknowledged to have received from the purchaser or assignee of said right.

It appears from another deed dated May 29, 1916, that Ramón Otero and his wife executed a general power of attorney for the purpose of administration to Prudencio Cordero.

Prudencio Cordero died in San Juan, P. R., on September 28, 1926.

All the foregoing facts appear from documentary evidence introduced at the trial. Ramón Otero filed in the District Court of San Juan an action against Agustina Mirabal to compel the latter, upon reimbursement of the sum of four hundred dollars, to execute a deed of resale of the lot and houses which had been sold to her by Prudencio Cordero on September 5, 1913. In the complaint it was alleged: That Prudencio Cordero was the owner of the said lot and houses; that he negotiated with the defendant a loan for $400, without specifying the time for payment, with interest thereon at the rate of 2% monthly, said payment to be secured with the said piece of urban property, and, as the interest was above the legal rate, the defendant required of Cordero to make the transaction appear as a sale with an agreement to reconvey within one year, and the interest thereon to appear as lease rental, and this was done in the deed of September 5, 1913, executed before notary Julio César González although it was understood that the deed would not affect the true nature of the transaction; that after the deed had been executed, Prudencio Cordero continued in the possession of the property sold, as owner thereof, paying the taxes, renting out rooms, paying insurance, and making repairs; that Cordero himself, with the consent of the defendant, on May 25, 1916, conveyed such right of redemption on the said property to Ramón Otero, continuing in such agreement the fiction

already mentioned, and that the plaintiff has ever since been enjoying the possession and ownership of the property; that both Prudencio Cordero and the plaintiff have always paid to the defendant the interest on the aforesaid loan; that on December 9, 1922, the defendant, notwithstanding her agreement, requested and obtained from the registrar of property the entry of the consummation of the said sale; that the plaintiff has tendered to the plaintiff the sum of $400 as the amount of the loan and requested her to execute to him a deed of reconveyance but that she has refused to do so; and he prayed that the defendant be adjudged to execute the said deed upon receipt of the $400, or that the marshal be directed to do so.

The defendant in her answer denied having contracted with Cordero the alleged loan and likewise denied the other essential allegations, pleading in her answer the existence of the sale contract with an agreement to reconvey, as well as the absence of any contract or connection with the plaintiff, and pleaded also lack of facts sufficient to constitute a cause of action.

Independent of the documentary evidence, that is, the deeds and the receipts for various sums and of sundry character, we desire to make some comments on the testimony offered.

The witnesses for the plaintiff were, besides the plaintiff himself, Tomás Díaz García, Antonio Rodríguez, Juan García, José Ramos, and Félix Rodríguez. The witnesses for the defendant were herself and Francisco Alamo Armas.

We have examined the testimony of Tomás Díaz García, who seems to be the most important of the plaintiff's witnesses. He stated that he was an employee of Prudencio Cordero; that the latter needed some money and obtained it through a friend; that he was present in the office of notary Julio César García at the time of the execution of the deed between Cordero and Agustina Mirabal; that the latter demanded interest at the rate of 2% monthly and that they

agreed on a sale with an agreement to repurchase, and that the deed was executed accordingly; he knew that Cordero sold the property to Otero and was present at the execution of the deed of sale and he was also present at the execution of a power of attorney from Otero to Cordero; that subsequent to the deed of sale to Agustina Mirabal, Cordero went on letting out the houses, collecting the rent and paying for repairs and other expenses. The witness stated that he had been away from Puerto Rico from 1918 to 1925, and that he knew the defendants by sight but never spoke to her.

Antonio Rodríguez testified that, in 1913, Prudencio Cordero told him that he needed $400 and that he mentioned Agustina Mirabal to him as the person who could lend him the money; and learned afterwards that the transaction had been made. He testified in regard to the value of the property and also stated that Ramón Otero is the person in possession thereof.

Witness Juan García is the tenant of a room in house No. 92, Flores Street, Cataño, which he testified having rented from Ramón Otero in March, 1926; that he considers Ramón Otero as the owner of the house and that Otero pays for the repairs. José Ramos and Félix Rodríguez testified similarly.

Plaintiff Ramón Otero testified that he had been the owner of the property in question since 1916. He stated at the beginning of his testimony that he had never paid anything on account of any mortgage; that he neither knew Agustina Mirabal nor has ever paid anything to her; that he owes $400 because he assumed the mortgage debt to her (the defendant) to whom he paid $10; that he took that sum to Panchito Alamo, who informed him that he did not know whether Agustina Mirabal would accept it or not, but that the money was delivered and he was given a receipt; that he does not know Agustina Mirabal nor has he ever seen her; that he used to send the $10 to Agustina Mirabal through Prudencio Cordero; that the latter died and then plaintiff made one payment to Agustina Mirabal; that he

has never talked with the defendant regarding any business with Cordero.

Testifying in her own behalf, the defendant said that she had purchased the two houses from Cordero and leased them to him and that he paid the' rent to her until he died, about two years ago; that she neither knows Otero nor has she made any agreement with him, nor did Cordero ever tell her that he had made any contract with Otero, nor could he do so in regard to the two houses which belonged to her; that she received a letter where mention was made of the $400, but she did not pay any attention to it because the houses belong to her, and that she has recorded them. She acknowledged the insurance premium receipts, whereupon the plaintiff admitted that the defendant, Agustina Mirabal had insured against fire the houses which are the object of this suit, during the years 1924, 1925, 1926, and 1927, and had paid the cost of such insurance out of her own funds.

Francisco Alamo testified that in 1925 he had collected from Cordero three receipts in regard to the houses of Agustina Mirabal, and that afterwards Otero went once to his office to pay him another receipt, handed to him by the defendant in case any person called on him to make payment; but that the receipt was not made out to Ramón Otero.

Upon such evidence, including the documentary evidence above referred to, the case was decided.

The absence of all proof regarding an extension of the agreement to reconvey should be noticed, as this is a very important element in the controversy herein. There is involved a written and formal agreement for the term of one year, which expired in 1914 and whose extension is vaguely hinted at by one of the parties. On the other hand, as opposed to such insinuation, there is the diligence of the defendant in applying for and obtaining the record of the consummation of the sale in the registry, which establishes a strong and logical presumption in her favor. Moreover, it seems strange that Prudencio Cordero should have waited

so many years, without fearing the recording of the said consummation in the registry, and without taking any steps to safeguard his rights, if any, and that somebody should be willing to purchase from him under such circumstances; and it seems still more strange if it was the case of a mere loan contract and not a deed of sale of an estate, to have allowed such a contract to stand from 1913 until 1926 without seeking to annull it. We are, therefore, of the opinion that the district court adjudged the matter correctly.

In view of that evidence, and especially such testimony as that given by the plaintiff, it is not to be expected that the court could have rendered a different decision without committing error, whether of fact or of law.

We need not go into a consideration of the Act of March 13, 1916, regulating the rate of interest, as the contract in question was executed on September 5, 1913, and it is clear that the said act can not be applied retroactively. In *Collazo* v. *Registrar of Caguas*, 25 P.R.R. 600, enough was said by this court to dispel all doubt as to what should be the accepted rule in regard to the retroactive effect of that act.

The judgment of the district court in the present case is in accordance with the facts and the law, and the errors assigned are without merit.

It must be affirmed.